# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | | |
|---|---|---|
| NICHOLAS GREEN, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CV416-285 |
| DETECTIVE LINDSEY TALLEY, | ) ) ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Nicholas Green presses his § 1983 claim against Garden City, Georgia Detective Lindsey Talley to recover income he lost while incarcerated. Doc. 7 at 4-6. The Court recommended dismissal of his claim against the Garden City Police Department, since it is not subject to suit under § 1983. *See* doc. 6 at 3-4 (citing, *inter alia*, *Bunyon v. Burke Cty.*, 285 F. Supp. 2d 1310, 1328-29 (S.D. Ga. 2003) (city police department was not an entity subject to suit)). But it also gave Green an opportunity to amend his Complaint. He has done so, naming Det. Talley. *See id.* & doc. 7. The Court will thus screen his Amended Complaint. *See, e.g.*, 28 U.S.C. § 1915A.

To the extent that it seeks compensatory damages, Green's claim

should be dismissed. As the Court explained in its previous Order, *see* doc. 6 at 2 n. 1, the Prison Litigation Reform Act (PLRA) precludes a prisoner from recovering compensatory damages "for constitutional violations [occurring in custody] unless he can demonstrate a (more than de minimis) physical injury." *Brooks v. Warden*, 800 F.3d 1295, 1307 (11th Cir. 2015); *see also* 42 U.S.C. § 1997e(e). The damages exclusion extends to injuries suffered "during custodial episodes, even if such custody occurred outside prison walls." *Napier v. Preslicka*, 314 F.3d 528, 533 (11th Cir. 2002). Non-physical injuries suffered because of an invalid arrest occur "in custody." *Napier*, 314 F.3d at 533-34 (injuries from mistaken arrest were suffered "in custody" when asserted by prisoner incarcerated on an unrelated charge); *see also Napier v. Preslicka*, 331 F.3d 1189, 1195-96 (11th Cir. 2003) (Barkett, J. dissenting) (noting that the *Napier* panel's interpretation of § 1997e(e) would limit prisoners' recovery for, *inter alia*, malicious prosecution).[1]

---

[1] It may seem startling that the PLRA precludes a prisoner's recovery of anything beyond nominal damages, even for the most egregious (albeit non-physical) constitutional violations. But *Napier* interpreted § 1997e(e)'s damages limitation to apply to any injury suffered "in custody," as that term is understood after *Miranda*. That includes "any situation in which a reasonable individual would feel a restraint on his movement such that he would not feel free to leave." *Napier*, 314. F.3d at 532-33. Hence, it includes many Fourth Amendment violations.

*Napier*'s facts underscore that holding's breadth. Napier's *brother* had been issued a trespass warning. *Id.* at 531. But two years later, the police arrested Napier himself for trespass, in violation of that warning, even though Napier produced valid identification, and pointed out the arresting officers' mistake. *Id.* "Later, *while imprisoned on a separate offense*," Napier filed a § 1983 action against the arresting officers for "embarrassment and mental anguish" from the Fourth Amendment violation. *Id.* (emphasis added). The *Napier* panel reasoned that, if Congress had intended to limit the PLRA's application to claims arising during the plaintiff's imprisonment, it could have relied on the more restrictive statutorily-defined term "prisoner" to express the statute's scope. *Id.* at 532. But it didn't. So "in custody" had to be read with its "settled legal meaning," as established by *Miranda* and its progeny. *Id.* Thus, "the PLRA should apply to prisoner lawsuits that claim injuries suffered during custodial episodes, even if such custody occurred outside prison walls." *Id.* at 533.

The connection between Napier's injury and his incarceration was even more attenuated, however -- his incarceration at the time he filed suit was on an unrelated charge. That didn't matter. Because "in custody" is unqualified, it refers to any custodial episode. *Id.* (explaining "Congress could have drafted the statute to say 'while thus imprisoned' or 'while in that custody' or 'during the aforementioned confinement to specifically tie the clause in question to the antecedent . . . .") Moreover, a broad reading of "in custody" supports PLRA's purpose:

> [p]ractically, the problem of frivolous lawsuits filed by prisoners is not limited exclusively to those lawsuits dealing with conditions of confinement. The natural target of a prisoner's litigious aggression is the government, and, as in this case, the vectors for such aggression are not limited to lawsuits challenging prison conditions. Rather, prisoners have cause and opportunity to file frivolous complaints concerning the range of alleged slights imposed on them by the government during their custodial episodes, both past and present, both in prison and in the back seat of a police car.

*Id.* at 534.

Although the remedies are limited, the Eleventh Circuit's construction of the PLRA does not foreclose the vindication of any prisoner's constitutional rights. First, and most clearly, § 1997e(e) is limited by its plain terms to "Federal action[s]," leaving open the possibility of a state-law action in state courts seeking an otherwise available remedy. 42 U.S.C. § 1997e(e). *Cf. Rose v. Lundy*, 455 U.S. 509, (1982) (noting in the context of requirement to exhaust state habeas remedies before seeking federal relief, that "[u]nder our federal system, the federal and state courts are equally bound to guard and protect rights secured by the Constitution." (internal

PLRA-subject claims that do not involve physical injury are limited to nominal damages.² *See Brooks*, 800 F.3d at 1308.

Green's Complaint indicates that he was incarcerated when he filed it, so it is subject to the PLRA. Doc. 1 at 3, 5; *Napier*, 314 F.3d at 532 (citing *Harris v. Garner*, 216 F.3d 970, 974 (11th Cir. 2000) (*en banc*)) ("[T]he PLRA applies to all cases *initiated* by a prisoner. . . ."). Green does not allege any (even *de minimis*) physical injury resulting from his allegedly infirm arrest. *See id.* at 5-6. Since the PLRA precludes his compensatory damages claim, it must be **DISMISSED**.

Green, for that matter, does not allege enough facts to support even a nominal damages claim. His Amended Complaint clarifies that he was arrested pursuant to a warrant, "sworn by Det. Lindsey Talley." Doc. 7

---

quotes, cite, and alteration omitted)). Second, *Brooks* makes clear that nominal damages are always available for constitutional violations, regardless of physical injury. 800 F.3d at 1308 (explaining nominal damages function to recognize the violation of rights). Finally, *Napier* suggests that the running of the statute of limitations might be equitably tolled while the application of the PLRA precluded suit. *See Napier*, 314 F.3d at 534 n. 3 ("The Eleventh Circuit has not yet been faced with a case that involves a prisoner's claim that is both barred by the PLRA during imprisonment and barred by the applicable statute of limitations after release from prison, thereby giving the plaintiff no opportunity to ever have his claim heard on the merits by a federal court. We proffer, but do not hold, as that issue is not before us, that such a result may be mitigated by the doctrine of equitable tolling . . . .").

² Although there is no established standard for the amount of nominal damages, $1.00 is a common sum. *See, e.g.*, PATTERN CIV. JURY INSTRUCTIONS 11TH CIR. 5.2 (2013) (for a Fourth Amendment Claim, the jury "may award $1.00 in nominal damages").

4

at 5. Since he was arrested pursuant to a warrant, albeit allegedly wrongfully obtained, his claim is cognizable as the constitutional analogue of common-law malicious prosecution. *See Wallace v. Kato*, 549 U.S. 384, 389-90 (2007); *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003) ("Our Court has identified malicious prosecution as a violation of the Fourth Amendment and a viable constitutional tort cognizable under § 1983."); *see also Carter v. Gore*, 557 F. App'x 904, 906 (11th Cir. 2014) (§ 1983 claim based on arrest pursuant to warrant was "properly" construed as malicious prosecution).

But to prevail Green "must prove a violation of his Fourth Amendment right to be free from unreasonable seizures in addition to the elements of the common law tort of malicious prosecution," and that requires: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Wood*, 323 F.3d at 882 (emphasis omitted).

In warrant-based arrest cases, an "officer commits a [constitutional] violation only if [his] affidavit [in support of the warrant application] lacked probable cause *and* [he] 'should not have *applied* for

5

the warrant.'" *Carter*, 557 F. App'x at 909 (quoting *Malley v. Briggs*, 475 U.S. 335, 345 (1986)). That is, a plaintiff must allege facts that support the conclusion "that a reasonable officer in [the defendant's] position would have known that he lacked arguable probable cause." *Id.* "'Affidavits supporting arrest warrants are presumptively valid.'" *United States v. Sarras*, 575 F.3d 1191, 1218 (11th Cir. 2009) (quoting *United States v. Kapordelis*, 569 F.3d 1291, 1309 (11th Cir. 2009)).[3] The statements they contain "need not actually be true, but they need[] 'to be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true.'" *Carter*, 557 F. App'x at 908 (quoting *Franks*, 438 U.S. at 166).

Green alleges that he was seized by a custodial arrest; that a criminal prosecution was instituted, and terminated in his favor; and

---

[3] *Sarras* and *Kapordelis* reflect the presumptive validity of affidavits supporting arrest warrants in a different context than presented here. They consider a criminal defendant's burden before entitlement to a hearing, under *Franks v. Delaware*, 438 U.S. 154 (1978), challenging the probable cause determination underlying the warrant. *Sarras*, 575 F.3d at 1218 (finding that defendant had not made sufficient showing to support entitlement to *Franks* hearing); *Kapordelis*, 569 F. 3d at 1309 (finding no error in determining *Franks* hearing was not warranted based on challenge to search warrant). Despite the different context, the same considerations support the requirement that a § 1983 plaintiff alleging that he was arrested pursuant to an invalid warrant provide *some* factual context, beyond the fact that the prosecution terminated in his favor, supporting the conclusion that the probable cause determination supporting the warrant was constitutionally infirm. *See Carter*, 557 F. App'x at 909-11.

that he suffered damages. *See* doc. 7 at 5. Those allegations are sufficient to satisfy three of the elements of his malicious prosecution claim. But for the fourth (that there was no probable cause for his arrest) element he merely states his belief "that as a result of Det. Talley bias and insufficient evidentiary proof of lack there of lead to me being falsely accused, falsely arrested and falsely detained." Doc. 7 at 5 (unedited).

Green's conclusory allegation is not sufficient to plausibly imply that Det. Talley did not have at least *arguable* probable cause to apply for the warrant. He must plead facts showing that the detective had no reason to believe that Green committed the crime, or otherwise had no proof that he did. *See Carter*, 557 F. App'x at 909-11 (considering sufficiency of factual allegations in support of § 1983 malicious prosecution claim and noting allegation that officer procured warrant despite "a number of [stated] reasons to believe that [the plaintiff] did not commit the crime and no proof that he did."); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do[;]" to state a claim upon which relief may be granted it must

include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (internal quotes and cites omitted)) Since he has failed to plead sufficient facts to support his claim, his amended Complaint, even limited to nominal damages, should be **DISMISSED**.[4]

Meanwhile, Green must pay his $350 filing fee. His furnished account information shows that he has had a $3.88 average monthly balance and $98.67 in monthly deposits in his prison account during the six months prior to filing his Complaint. Doc. 5 at 4. He therefore owes a $19.73 initial partial filing fee. *See* 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula). His custodian (or designee) shall set aside 20 percent of all future deposits from his account and forward same to the Clerk each time the set aside amount reaches $10.00, until the balance of the Court's $350.00 filing fee has been paid in full.

The Clerk is **DIRECTED** to send this Report and

---

[4] Despite Green's failure to state a viable claim, even after his amendment, his opportunity to object to this Report and Recommendation within 14 days of service affords him an additional opportunity to resuscitate his case. He may submit a Second Amended Complaint during that period if he believes it would cure the defects discussed above. *See Willis v. Darden*, 2012 WL 170163 at * 2 n. 3 (S.D. Ga. Jan. 19, 2012) (citing *Smith v. Stanley*, 2011 WL 1114503 at * 1 (W.D. Mich. Jan. 19, 2011)).

Recommendation (R&R) to Green's account custodian immediately. In the event he is transferred to another institution, his present custodian shall forward a copy of this R&R and all financial information concerning payment of the filing fee and costs in this case to his new custodian. The balance due from Green shall be collected by the custodian at his next institution in accordance with the terms of this R&R.

This R&R is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 626(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of

rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. U.S.*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this <u>5th</u> day of May, 2017.

*[signature]*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA